UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Dawn Denise Shipp,

                              Plaintiff,

        v.

Carolyn W. Colvin,
*Acting Commissioner of Social Security*,

                             Defendant.

**Decision and Order**

16-CV-919 HBS
(Consent)

---

## I. INTRODUCTION

The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c). The Court has reviewed the Certified Administrative Record in this case (Dkt. No. 8), and familiarity is presumed. This case comes before the Court on cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. Nos. 15, 16.) In short, plaintiff is challenging the final decision of the Commissioner of Social Security (the "Commissioner") that she was not entitled to Disability Insurance Benefits under Title II, or Supplemental Security Income under Title XVI, of the Social Security Act. The Court has deemed the motions submitted on papers under Rule 78(b).

## II. DISCUSSION

The ultimate issue to be determined by this Court is whether the ALJ's decision that plaintiff was not under a disability is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir.1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

For purposes of Social Security disability insurance benefits, a person is disabled when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

Plaintiff bears the initial burden of showing that her impairments prevent her from returning to her previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing her past relevant work; and

(5) whether the impairment prevents the plaintiff from continuing her past relevant

work; and whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry, supra*, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, the ALJ has an affirmative duty to develop the record. *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing her past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that she has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to her past relevant work given her residual functional capacity. *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

Plaintiff argues that the Administrative Law Judge ("ALJ") who rendered an unfavorable decision improperly evaluated her residual functional capacity ("RFC"). According to plaintiff, "the ALJ chose to reject multiple medical opinions as well as Plaintiff's subjective complaints, based on what he believed to be a paucity of objective findings. As objective findings are not the only indicator of the severity of SLE, the ALJ erred by doing so." (Dkt. No. 15-1 at 11.) Plaintiff points to a six-page RFC questionnaire where "tenderness" was circled next to the words "hands, wrists, ankles." [542.] Plaintiff cites heavily to *Mead v. Colvin*, No. 3:15CV1331 (AWT), 2017 WL 1134393 (D. Conn. Mar. 27, 2017), to make the point that the ALJ did not inquire enough about how her symptoms can vary greatly. The failure to account for the variation, according to plaintiff, explains why the ALJ gave her only limited credibility. On this basis, plaintiff urges a remand and an effort by the ALJ to contact her treating sources. The Commissioner responds by acknowledging that lupus generally can have variations in symptoms but that no intermittent symptoms were

3

actually reported to treatment providers. "Even accepting that an individual with lupus may only experience intermittent symptoms, the medical evidence in this matter falls short of demonstrating even intermittent symptoms. The overwhelming majority of findings from examining sources in the record were unremarkable and any positive findings were mild." (Dkt. No. 16-1 at 19.) The Commissioner notes further that plaintiff was able to perform daily activities; to perform some work during the times in question; and to travel a little. (*Id.* at 22–23.)

The Commissioner has the better argument here. Plaintiff's pre-surgical exam for gall bladder removal acknowledged her history of lupus but found normal results. [528.] On September 26, 2011, plaintiff was found with a normal range of motion of all joints and no evidence of synovitis. [489.] The same findings occurred on December 1, 2011, with some eye redness and vitiligo of the fingers. [491.] Normal range of motion was found again on March 7, June 18, September 19, and December 28, 2012; and on April 2, 2013. [493, 495, 497, 499, 501.] Only some diffuse joint pain was found on May 16, 2013. [532.] Additionally, the medical notes from Mount St. Mary's Hospital from 2009 and 2010 [399–428] contain subjective complaints from plaintiff but no clinical findings and no plans beyond maintaining medication and urging plaintiff to keep her appointments for rheumatology consultation. The record thus shows a sustained period of about four years during which regular clinical visits did not uncover any major flareups of symptoms. This fact alone suffices to distinguish *Mead v. Colvin* and the objective symptoms that were captured at least a few times in the clinical records of that case.

Against the medical record here stands the six-page, checkbox-type RFC questionnaire from Dr. Sauret that the ALJ mostly incorporated into the final RFC determination. [535–40.] For example, the determination that plaintiff can perform light work differs only a little from the checkmarks that would establish capacity for sedentary work [538]; the light work determination is

4

consistent with the overall medical record. *See* 20 C.F.R. § 404.1567(b). The questionnaire had checkmarks indicating that plaintiff should avoid extremes in temperature. [539.] The ALJ incorporated temperature into the RFC determination. [26.] As one more example, the questionnaire suggested limitations in fine motor functions in plaintiff's hands. [539.] The ALJ noted that plaintiff would have occasional limitations with repetitive use of her hands. [26.] The remainder of the checkmarks in the questionnaire come with no explanation and are too conclusory to oppose a consistent medical record. The Second Circuit has held that such standardized form opinions are "only marginally useful for purposes of creating a meaningful and reviewable factual record." *Halloran v. Barnhart*, 362 F.3d 28, 31 n.2 (2d Cir. 2004); *see also Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best").

Under these circumstances, substantial evidence supports the ALJ's assessment of plaintiff's RFC and credibility. The medical record is consistent enough that recontacting any of plaintiff's treating sources was unwarranted.

### III. CONCLUSION

The Commissioner's final determination was supported by substantial evidence. For the above reasons and for the reasons stated in the Commissioner's briefing, the Court grants the Commissioner's motion (Dkt. No. 16) and denies plaintiff's cross-motion (Dkt. No. 15).

The Clerk of the Court is directed to close the case.

SO ORDERED.

                                                                         __/s Hugh B. Scott_____
                                                                              Hon. Hugh B. Scott
                                                                              United States Magistrate Judge

DATED: October 9, 2018